# United States Court of Appeals
## For the First Circuit

No. 18-1130

JOSEFINA ARELIS RUIZ-GUERRERO,

Petitioner,

v.

MATTHEW G. WHITAKER,[*]
ACTING UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF THE
BOARD OF IMMIGRATION APPEALS

Before

Howard, <u>Chief Judge</u>,
Torruella and Kayatta, <u>Circuit Judges</u>.

<u>Eloa J. Celedon</u> and <u>Celedon Law</u> on brief for petitioner.
<u>Kathryn M. McKinney</u>, Attorney, Office of Immigration Litigation, <u>Chad A. Readler</u>, Acting Assistant Attorney General, Civil Division, and <u>Stephen J. Flynn</u>, Assistant Director, Office of Immigration Litigation, on brief for respondent.

December 12, 2018

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Acting Attorney General Matthew G. Whitaker has been substituted for former Attorney General Jefferson B. Sessions III as the respondent.

**HOWARD**, <u>Chief Judge</u>.  Petitioner Josefina Arelis Ruiz-Guerrero ("Ruiz"), a native and citizen of the Dominican Republic, appeals the order of the Board of Immigration Appeals ("BIA" or "Board") denying her request for deferral of removal under the United Nations Convention Against Torture ("CAT").  After a careful review of the record, we deny the petition.

I.

Ruiz first entered the United States in 2006.  She was removed on April 2, 2013, after a 2010 conviction in Massachusetts for distribution of a controlled substance.  She re-entered the country on August 10, 2016, but was again arrested in connection with a controlled substance offense.  As a result, her prior removal order was reinstated.

Ruiz sought deferral of removal under the CAT.[1]  Her claim was based on domestic abuse that she suffered at the hands of Rafael Velázquez, her partner of fifteen years.  Velázquez lived with Ruiz in both the Dominican Republic and the United States, but is currently residing in the Dominican Republic after having been removed.

---

[1] It was determined at the outset that Ruiz was ineligible for withholding of removal because of the seriousness of her 2010 drug distribution offense based on 8 U.S.C. § 1231(b)(3)(B)(ii) and therefore the Immigration Judge considered her application only for deferral of removal pursuant to 8 C.F.R. § 1208.17.  On appeal and in her petition for review, Ruiz has not contested this determination.

In order to qualify for deferral of removal under the CAT, an applicant must show that she is more likely than not to be tortured upon return to her home country. 8 C.F.R. § 1208.17. The CAT defines "torture" as:

> "[A]ny act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person . . . when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18.

Therefore, deferral applicants have a twofold burden. They must show (1) that the harm they may suffer constitutes torture, and (2) that the torture is more likely than not to occur upon removal.

An Immigration Judge ("IJ") found Ruiz to be credible in describing her sustained abuse. Ruiz testified at her merits hearing that she reported at least one instance of abuse by Velázquez to the local police in the Dominican Republic, but the police were unable to apprehend him because he disappeared for about fifteen days. The IJ also considered several documents regarding the pervasiveness of violence against women in the Dominican Republic. The IJ granted deferral of removal, saying that he lacked "confidence that the applicant will not face a likelihood of torture" upon removal and that he was "not confident

that the police would do anything to prevent [Velázquez] from harming her."

The BIA reversed the IJ's determination, observing that the IJ applied an incorrect legal standard. The BIA noted that "[r]ather than determining whether the applicant met her burden of proving a clear probability of torture by or at the instigation of or with the consent or acquiescence" of the government, the IJ merely considered whether he had "confidence that [Ruiz] would not face torture if she were to return to the Dominican Republic and whether the police would protect her from her abuser[]." In applying what it viewed as the proper CAT deferral standard, the Board concluded that Ruiz did not meet her burden of establishing that the government had acquiesced in her harm or would be more likely than not to do so if she were to return. The BIA thus rested its denial of deferral on the lack of a demonstrated connection between the feared harm and the involvement of the local authorities.

Before us, Ruiz argues that the Board erred in finding that she had not established that the government would acquiesce in her harm upon removal.[2]

---

[2] Ruiz does not argue that the BIA impermissibly engaged in factfinding. See 8 C.F.R. § 1003.1(d)(3)(iv) ("Except for taking administrative notice of commonly known facts . . . the Board will not engage in factfinding in the course of deciding appeals . . . If further factfinding is needed in a particular case, the Board may remand the proceeding to the immigration judge . . . .");

We will uphold the agency's factual determinations as long as they are "supported by reasonable, substantial, and probative evidence on the record considered as a whole." Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014) (quoting Sunarto Ang v. Holder, 723 F.3d 6, 10 (1st Cir. 2013)). Reversal is warranted only if the record compels a contrary conclusion. Granada-Rubio v. Lynch, 814 F.3d 35, 38 (1st Cir. 2016). At the outset, we note that the BIA was correct in concluding that the IJ applied an improper legal standard. Specifically, to prevail on her CAT claim, Ruiz must show that she is more likely than not to be tortured upon return to the Dominican Republic. 8 C.F.R. § 1208.17; Aguilar-De Guillen v. Sessions, 902 F.3d 28, 36 (1st Cir. 2018). As part of this showing, she must establish that the harm would be "inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting

---

Rosales Justo v. Sessions, 895 F.3d 154, 161 (1st Cir. 2018) ("Whether a government is unwilling or unable to protect an asylum applicant from persecution 'is a question of fact.'" (quoting Ortiz-Araniba v. Keisler, 505 F.3d 39, 42 (1st Cir. 2007))). Rather than arguing that the Board should have remanded for the IJ to make a factual finding on the likelihood of torture using the correct standard, Ruiz instead argues only that the BIA itself should have found the requisite likelihood, or in the alternative that the BIA should be directed to remand for the IJ to consider evidence that Ruiz claims the Board ignored or weighed improperly. We address her claims as she has presented them. See Dawoud v. Holder, 561 F.3d 31, 37 (1st Cir. 2009) (issues not addressed in petitioner's brief are deemed waived).

in an official capacity." 8 C.F.R. § 1208.18; <u>Morris</u> v. <u>Sessions</u>, 891 F.3d 42, 46 (1st Cir. 2018). The BIA having determined that Ruiz did not establish the requisite connection between the harm and the government, we focus our review on whether the record compels a contrary conclusion to the one reached by the Board.

Ruiz testified that she reported being beaten by Velázquez to the local police in the Dominican Republic in 2014. The police responded, but they were unable to apprehend Velázquez, as he had fled and remained away for some time. She also testified that she stopped reporting abuse after this because the police had been ineffective and because she feared the abuse could worsen if she continued to report. The government submitted a United States State Department Country Report and Ruiz submitted other reports regarding violence against women in the Dominican Republic.[3] Taken as a whole, this evidence does not compel a finding of government acquiescence. While the Country Report reveals troubling data regarding gender-based violence, the record fails to show the government's acquiescence in the harms. On the contrary, the Country Report details several government agencies and policies

---

[3] Ruiz submitted four reports to the IJ. The IJ considered three of these but determined the fourth to be outdated. The IJ found the Country Report to be the "most recent and best evidence" before the court. On appeal, Ruiz submitted an additional news article, but the BIA refused to consider it because Ruiz failed to establish that the article could not have been presented below or that it was likely to change the result of the case.

that are designed to combat violence against women. Most prominently, the IJ and the BIA noted that the Attorney General's Office in the Dominican Republic has established a Violence Prevention and Attention Unit with eighteen offices throughout the country.

We cannot say that the combination of Ruiz' testimony and the reports that were submitted compel the conclusion that her feared harm would be "inflicted by or at the instigation of or with the consent or acquiescence" of the government. 8 C.F.R. § 1208.18; see also Granada-Rubio, 814 F.3d at 40 (denying relief where petitioner was unable to show government acquiescence); Makieh v. Holder, 572 F.3d 37, 44 (1st Cir. 2009) (same). As a result, we must uphold the decision of the BIA.

III.

For the foregoing reasons, the petition for review is denied.