# United States Court of Appeals
## For the First Circuit

No. 19-1447

SALIM T. AL AMIRI,

Petitioner,

v.

JEFFREY ROSEN,[*]
Acting U.S. Attorney General,

Respondent.

PETITION FOR REVIEW OF AN ORDER
OF THE BOARD OF IMMIGRATION APPEALS

Before

Howard, Chief Judge,
Barron, Circuit Judge,
and Katzmann, Judge.[**]

J. Christopher Llinas, with whom Llinas Law, LLC was on brief, for petitioner.

Brooke M. Maurer, Trial Attorney, Office of Immigration Litigation, Civil Division, United States Department of Justice, with whom Ethan P. Davis, Acting Assistant Attorney General, Civil Division, and Nancy E. Friedman, Senior Litigation Counsel, were

---

[*] Pursuant to Federal Rule of Appellate Procedure 43(c)(2), Acting Attorney General Jeffrey Rosen has been substituted for former Attorney General William P. Barr.

[**] Of the United States Court of International Trade, sitting by designation.

on brief, for respondent.

January 11, 2021

**BARRON**, **Circuit Judge**.  Salim Al Amiri, an Iraqi citizen, seeks relief from removal on the grounds of asylum, withholding of removal, and protection under the United Nations Convention Against Torture ("CAT").  He premises his requests for such relief on the harm that he fears that he would be subjected to in Iraq at the hands of members of Iraq's military or civilian insurgents operating in that country.  Al Amiri contends that he has reason to fear he would be subjected to that harm on account of his work as a paid contractor for the United States Army during the war in Iraq, as in that role he educated U.S. soldiers about Iraqi customs and practices as they prepared for their deployment.  We vacate and remand the ruling of the Board of Immigration Appeals ("BIA") denying his claims for asylum and withholding of removal, but we deny his petition insofar as it challenges the BIA's ruling rejecting his CAT claim.

## I.

Al Amiri was born in Iraq in 1983, but he then left that country with his family in 1991.  He spent several years in refugee camps in Saudi Arabia before coming with his family to the United States.  In November of 1994, Al Amiri was granted lawful permanent resident status in this country, where he has resided ever since.  He has two children, both of whom are American citizens.

During the war in Iraq, he was hired by the U.S. government to train Army personnel.  In that role, he taught

- 3 -

soldiers about Iraq's cultural norms and how to interact appropriately with the general population in that country, including how to treat women and children and how to enter another's home respectfully. He completed his duties successfully and received a certificate of appreciation from the U.S. government for his services.

Since moving to the United States, Al Amiri has traveled to Iraq at least three times, in 2015, 2017, and 2018. On his most recent trip there, which began in May 2018, Al Amiri and his family spent six weeks visiting his grandmother, who was in poor health.

Al Amiri's petition for review may be traced to events that transpired upon his return to the United States from that last trip to Iraq. After flying home from Iraq and arriving at Logan International Airport in Boston, Massachusetts in July 2018, he applied for admission to enter the United States. At that time, U.S. Customs and Border Protection officers identified a 2015 conviction that Al Amiri had received for larceny under Michigan law for having stolen a phone. They concluded that, in consequence, he was subject to removal.[1]

---

[1] In evaluating Al Amiri's admissibility, officers noted that he had been placed in removal proceedings in 2011 for an earlier conviction. In those 2011 proceedings, he sought asylum, but his application was never adjudicated because he obtained cancellation of removal.

Al Amiri was served with a notice to appear in removal proceedings later that month. In October of that year, the Immigration Judge ("IJ") determined that the U.S. Department of Homeland Security had proved Al Amiri's removability by clear and convincing evidence and ordered his removal. Al Amiri had sought relief from removal by applying for asylum under § 208 of the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1158, withholding of removal under INA § 241(b)(3), 8 U.S.C. § 1231(b)(3), and withholding of removal under the CAT, as implemented by 8 C.F.R. § 1208.16-.18. But, the IJ rejected each of these requests.

Al Amiri appealed the IJ's ruling to the BIA, which affirmed. He now petitions for review of the BIA's decision.

## II.

We start with Al Amiri's challenge to the BIA's decision affirming the IJ's denial of his asylum claim. An applicant for asylum must satisfy various statutory requirements to secure that relief. See 8 U.S.C. § 1158(b). Among them is what is known as the "nexus" requirement, pursuant to which the applicant must show "that he is unwilling or unable to return to his country of origin 'because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion.'" Singh v. Mukasey, 543 F.3d 1, 4 (1st Cir. 2008) (quoting 8 U.S.C. § 1101(a)(42)(A)).

If an applicant can show that he suffered past persecution, he is entitled to a presumption that his fear of suffering it in the future is well founded.  Carcamo-Recinos v. Ashcroft, 389 F.3d 253, 257 (1st Cir. 2004).  Otherwise, he must "prove that his fear is both genuine and objectively reasonable." Id.  To show that his fear is objectively reasonable, however, the asylum applicant need not demonstrate that it is more likely than not that he will be persecuted.  INS v. Cardoza-Fonseca, 480 U.S. 421, 431 (1987) ("One can certainly have a well-founded fear of an event happening when there is less than a 50% chance of the occurrence taking place.").

We consider questions of law de novo.  Ye v. Lynch, 845 F.3d 38, 42 (1st Cir. 2017).  We consider factual findings "under the deferential 'substantial evidence' standard, reversing only if a 'reasonable adjudicator would be compelled to conclude to the contrary.'"  Castillo-Diaz v. Holder, 562 F.3d 23, 26 (1st Cir. 2009) (quoting 8 U.S.C. § 1252(b)(4)(B)).  In applying that standard, we look not to isolated pieces of evidence but to the "record considered as a whole."  Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020) (quoting Thapaliya v. Holder, 750 F.3d 56, 59 (1st Cir. 2014)).

Al Amiri contends that the BIA erred in affirming the IJ's determination that he could not meet the nexus requirement on the ground that he had failed to show that the harm he fears he

would endure in Iraq would be inflicted on account of his membership in a particular social group. Al Amiri also contends that the BIA erred in affirming the IJ's ruling denying his asylum claim for a separate reason. Here, he contends that the record fails to support the BIA's affirmance of the IJ's finding that he did not sufficiently show that he had an objectively reasonable basis for fearing that he would face harm in Iraq. We address each of these contentions in turn.

**A.**

The BIA agreed with the IJ's rejection of Al Amiri's contention that "Americanized or westernized individuals" in Iraq constitute a "particular social group." For that reason, the BIA agreed with the IJ that Al Amiri could not satisfy the nexus requirement by showing that he feared that he would be harmed in Iraq based on his membership in that group. The BIA reasoned that this "proposed social group was vague" and "did not have sufficient particularity or social distinction," citing to one of this Court's opinions holding that secularized, westernized Pakistanis do not constitute a particular group. See Ahmed v. Holder, 611 F.3d 90, 95 (1st Cir. 2010).

The BIA's determination that the IJ correctly ruled that "Americanized or westernized individuals" in Iraq are not "sufficiently particularized to constitute a cognizable particular social group," however, does not in and of itself suffice to

support the conclusion that Al Amiri cannot satisfy the nexus requirement. For, as we will explain, Al Amiri also tied his nexus showing to his asserted membership in a distinct "particular social group."

Before the IJ and the BIA, Al Amiri put forth evidence to show that while he was residing in the United States he had served as a paid contractor for the U.S. Army during the Iraq War and, in that capacity, had helped to train its soldiers about Iraqi culture and customs in preparation for their deployment to Iraq. He also put forth evidence to show that Iraqis who provided assistance to the U.S. military in connection with that war themselves constituted a particular social group and that members of this group, because they had provided such assistance, were at risk of harm from not only members of the Iraqi military but also civilian members of various insurgent groups or militias operating in Iraq. Based on this evidence, Al Amiri then contended -- as a distinct ground for his asylum claim -- that the harm to which he feared he would be subjected if he were removed to Iraq would be inflicted on him on account of his membership in this group.

Notwithstanding that Al Amiri advanced this contention below, the BIA did not purport to rule in rejecting his asylum claim on nexus grounds that Iraqis who had assisted the U.S. military during the Iraq War did not constitute such a qualifying group. Thus, the BIA's ruling provides no basis for concluding

- 8 -

that Al Amiri's asylum claim comes up short on the ground that he failed to identify a particular social group to which the harm that he fears that he would be subjected to in Iraq could be tied. See Gailius v. INS, 147 F.3d 34, 44 (1st Cir. 1998) (explaining that the focus of this Court's review is the "grounds invoked by the agency" and that "[t]he agency's decision cannot be supported on reasoning that the agency has not yet adopted" (first quoting SEC v. Chenery Corp., 332 U.S. 194, 196 (1947); and then quoting P.R. Sun Oil Co. v. EPA, 8 F.3d 73, 79 (1st Cir. 1993))).

**B.**

That said, as we have noted, an asylum applicant must show that he has a reasonable basis for fearing that he would suffer harm on account of his membership in a particular social group. Thus, the applicant must show not only that he subjectively fears being harmed on that basis, but also that it is objectively reasonable for him to fear such harm. For that reason, even if we assume that Al Amiri's prior work for the U.S. military made him a member of a "particular social group," he still must show that his fear of being harmed in Iraq on account of being in that group is objectively reasonable.

To make that showing, Al Amiri submitted evidence recounting instances of the harm that has been done in Iraq to Iraqis for their past service to the U.S. military during the war. He contends that this evidence supports a finding that the nature

- 9 -

of the threat posed to such persons is widespread and diffuse, as it emanates from hostility to such persons that is harbored by a broad range of actors who are not controllable by the Iraqi government.

Al Amiri's fear of being harmed on this basis, however, is necessarily a function, at least in part, of whether those in Iraq from whom he fears harm for his past work for our country's armed forces would learn of it. It is with respect to Al Amiri's showing on this score that the BIA held that he did not adequately establish that he had a reasonable basis for his fear.

The BIA determined in that regard that the IJ made no clear error in finding that Al Amiri "would not be singled out or targeted as a person who assisted the U.S. Military" because "only one neighbor in Iraq knew" about the assistance that he had provided and "that neighbor supported and assisted him by telling him to keep quiet about it and not to tell anyone." But, here, too, we conclude that the BIA's decision affirming the IJ's ruling cannot be sustained.

Al Amiri does not premise his fear of harm -- as some unsuccessful asylum seekers have in other cases -- on the potential discovery by others of beliefs or opinions that were held but never openly expressed. See, e.g., Zhakira v. Barr, 977 F.3d 60, 67 (1st Cir. 2020) (affirming BIA's denial of asylum seeker's political-opinion claim where applicant had "taken 'no actual

- 10 -

political action'" and "identifie[d] <u>no</u> evidence indicating that Al-Shabab would be aware of his political views" (emphases added)); <u>Archila</u> v. <u>Holder</u>, 495 F. App'x 98, 101 (1st Cir. 2012) (finding an insufficient nexus between feared persecution and political opinion opposing guerrilla groups because applicant "offered <u>no</u> evidence that his resistance was <u>understood by the guerrillas</u> to be political in nature" (first emphasis added)).  Rather, he premises his fear on the discovery of conduct in which he openly engaged and that is well documented in official records -- namely, his paid work for the U.S. government assisting our military during the Iraq War.

In consequence, as the record clearly demonstrates, numerous individuals with ties to Iraq know of the assistance that Al Amiri provided to the U.S. Army during the Iraq War.  They include not only those in the U.S. military with whom he worked who have returned to Iraq for periods of time, but also members of his family who are in regular contact with people in the country.

Thus, although we do not dispute that one could reasonably infer from Al Amiri's testimony that the neighbor in Iraq whom he told about his past work would be as discreet as he admonished Al Amiri to be with that information, we must determine whether substantial evidence supports the BIA's finding that Al Amiri lacked a reasonable basis for his fear by considering the record "as a whole."  <u>Sanabria Morales</u>, 967 F.3d at 19 (quoting

<u>Thapaliya</u>, 750 F.3d at 59).  We thus must widen the lens and look beyond Al Amiri's testimony regarding the one person in Iraq in whom he confided about his past service to this country.  When we do, we are compelled to hold that the record fails to support the conclusion that Al Amiri could not reasonably fear that other individuals in Iraq would learn of his prior work, given the broad range of persons with ties to Iraq who already know of it.

Nor does the BIA's invocation of <u>Y.C.</u> v. <u>Holder</u>, 741 F.3d 324 (2d Cir. 2013), support our reaching a different conclusion.  There, the Second Circuit denied claims for relief from removal brought by two Chinese noncitizens, Y.C. and X.W, on the ground that they had failed to make sufficient showings that their activism in the United States in support of pro-democracy efforts in their home country could become known to Chinese authorities, such that they could reasonably fear being persecuted by the Chinese government for their prior activism.  <u>Id.</u> at 333-37.  But, the differences between that case and this one are substantial.

Y.C., we note, predicated her fear that her activism would be discovered by the Chinese government on two things: a single article she had written more than eight years earlier in a publication in the United States and her past participation in candlelight vigils in front of the Chinese Embassy in New York.  <u>Id.</u> at 329, 333-34.  However, no evidence indicated that the

publication in which the single article appeared circulated in China, and only an "unsworn" affidavit from her husband supported her contentions that she had participated in such vigils and that Chinese authorities knew that she had. Id. at 334. Thus, the fact that the Second Circuit deemed Y.C.'s basis for fearing harm too "speculative" does not lead us to conclude that the BIA was permitted to reach a similar judgment here, given the record in this case.

Moreover, while X.W. predicated his fear on activism that was better documented than Y.C.'s, he sought withholding of removal, not asylum. Id. at 336-37. He thus was obliged to make a more stringent showing about the probability of his past conduct being discovered by his putative persecutors than Al Amiri is. Al Amiri needs to show only that a potential persecutor "could become aware" of the trait that could give rise to persecution. Matter of Mogharrabi, 19 I. & N. Dec. 439, 446 (B.I.A. 1987). The Second Circuit rejected X.W.'s claim because it determined that such discovery was not "likely." See Y.C., 741 F.3d at 337; see also id. at 335 (discussing the "higher burden of proof" that applies to withholding of removal claims relative to asylum claims). Thus, in addition to the fact that the Second Circuit was assessing the chances that a petitioner's prior actions would be discovered by a government official -- rather than, as in this case, a diffuse set of official and unofficial actors -- it was applying a much

- 13 -

more demanding standard of proof than applies to Al Amiri's asylum claim.[2]

## C.

There is one other ground on which the BIA relied in affirming the IJ's denial of Al Amiri's asylum claim. This ground, too, concerned his failure to show that his fear of harm was objectively reasonable.

Here, the BIA focused on Al Amiri's "repeated, voluntary, and somewhat lengthy returns to Iraq," which it found, as had the IJ, "severely undercut any objective fear of harm." The BIA emphasized in this regard that the trips occurred after Al Amiri's earlier asylum application, which he had filed in 2011 and in which he also had claimed a fear of returning to Iraq.

But, Al Amiri's most recent trip to Iraq lasted six weeks and was undertaken to visit his ailing grandmother. The record does not show that his earlier trips were any longer, and it shows that at least one was for the similar purpose of paying respects to an ill or deceased family member. The fact that he was able to conceal his employment history during time-limited trips to Iraq

---

[2] The BIA did not find that, even if the fact of Al Amiri's prior work for the U.S. military did become known in Iraq by persons other than his neighbor, he still would have no reasonable basis for fearing harm. Given that the record reveals that the threat faced by those in Iraq who have provided such service is diffuse in nature, we are dubious the record would support such a finding in any event.

- 14 -

does not mean that he will be able to do so for months and years on end. Especially given that neither the IJ nor the BIA disputed Al Amiri's assertion that he subjectively understood the risk of disclosure to be appreciably greater if he were to be required to take up residence in Iraq than it was during controlled visits with family, we do not see what basis there is for concluding that it was objectively unreasonable for him to fear that he could not protect himself from the harm that disclosure could cause him if he were removed to that country. Cf. Mukamusoni v. Ashcroft, 390 F.3d 110, 125 (1st Cir. 2004); see also Tarraf v. Gonzales, 495 F.3d 525, 534 (7th Cir. 2007) (noting that "[t]here well may be circumstances when a person who legitimately fears persecution nevertheless might elect to return temporarily to his home country" because, for example, "health conditions of family members and other major life events might drive a person to choose to take certain risks").

### D.

For all these reasons, we conclude that the BIA's basis for upholding the IJ's decision to deny Al Amiri's asylum claim cannot be sustained, and so we vacate it. Moreover, because we so hold, we also must vacate the BIA's decision to affirm the IJ's denial of Al Amiri's claim for withholding of removal, as the BIA premised that ruling on its affirmance of the IJ's denial of his asylum claim.

We have left to address, then, only the BIA's denial of Al Amiri's claim for relief under the CAT.  As we have already explained, to show a well-founded fear of persecution sufficient to ground an asylum claim, a petitioner need not show even by preponderance of the evidence that the persecution will occur.  Cardoza-Fonseca, 480 U.S. at 431.  By contrast, however, "[a] petitioner seeking CAT protection must show 'it is more likely than not' that he would be subject to torture 'by or with the acquiescence of a government official.'"  Aldana-Ramos v. Holder, 757 F.3d 9, 19 (1st Cir. 2014) (quoting Nako v. Holder, 611 F.3d 45, 50 (1st Cir. 2010)).

The BIA held here that the IJ did not clearly err in its finding as to the inadequacy of Al Amiri's showing "with regard to the probability of torture."  Therefore, the BIA concluded there was "no reason to disturb" the holding that Al Amiri "did not demonstrate that it is more likely than not that he would suffer abuse amounting to torture . . . by or with the consent or acquiescence of public officials."

Al Amiri responds by pointing to evidence in the record supporting his assertion that he could suffer abuse amounting to torture either because of his Americanized mannerisms or due to his work for the U.S. military.  But, the proffered evidence is not of a sort that could support the conclusion that "any

reasonable adjudicator would be compelled to conclude" that Al Amiri has shown that it is more likely than not that he will suffer such harm.  See 8 U.S.C. § 1252(b)(4)(B).  Accordingly, we cannot reverse the BIA's determination that the IJ's holding on this front was not clear error, and so we uphold the BIA's ruling affirming the IJ's denial of Al Amiri's CAT claim.

## IV.

Al Amiri's petition for review is granted in part, as we vacate the BIA's decision as to his claims for asylum and withholding of removal and remand for further proceedings consistent with this opinion.  With respect to his challenge to the BIA's affirmance of the IJ's denial of his CAT claim, however, his petition for review is denied.