# United States Court of Appeals
## For the First Circuit

No. 20-1302

DARWIN ALIESKY CUESTA-ROJAS,

Petitioner,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

Before

Lynch, Lipez, and Barron,
Circuit Judges.

Irene C. Freidel, with whom PAIR Project was on brief, for petitioner.

Gene P. Hamilton, Counselor to the Attorney General, U.S. Department of Justice, Office of the Attorney General, with whom Ethan P. Davis, Acting Assistant Attorney General, Civil Division, Zoe J. Heller, Senior Litigation Counsel, and Katherine S. Fischer, U.S. Department of Justice, Office of Immigration Litigation, Civil Division, were on brief, for respondent.

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the respondent.

March 15, 2021

**BARRON**, **Circuit Judge**.  Darwin Aliesky Cuesta Rojas ("Cuesta Rojas"), a native and citizen of Cuba, petitions for review of an order of the Board of Immigration Appeals ("BIA") affirming the denial of his application for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT").  We vacate and remand.

## I.

Cuesta Rojas entered the United States without inspection in March 2019 and was apprehended at an unknown location near the southern border.  After the United States Department of Homeland Security ("DHS") took him into custody, Cuesta Rojas expressed a fear of returning to Cuba.  A credible fear interview was then scheduled.

An asylum officer conducted the credible fear interview by telephone in Spanish on May 8, 2019.  The interview lasted for one hour and nine minutes.

The asylum officer took notes during the interview and also prepared a short, two-paragraph "Summary of Testimony" that was appended to the asylum officer's interview notes.  The document as a whole contained boxes that the interviewer marked to confirm that Cuesta Rojas had been read the summary and had agreed that it was accurate.  Another box indicated that the interviewer had asked whether Cuesta Rojas had "any changes/corrections" to the summary and that he had answered "no."

- 3 -

According to the summary, Cuesta Rojas told the asylum officer that he is "considered to be an opponent of the Cuban gov[ernment]" and that he had been "arrested, detained, beaten, and threatened [with] prison for being against the Cuban government . . . on a number of occasions" by individuals associated with the Cuban police.

Cuesta Rojas reviewed the summary and agreed that it was accurate. The asylum officer found Cuesta Rojas credible and referred his case to immigration court.

Cuesta Rojas remained in detention as he awaited further immigration court proceedings. On June 5, 2019, DHS served Cuesta Rojas with a Notice to Appear that charged him with removability under 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), (a)(6)(A)(i). At his initial appearance on June 14, 2019, Cuesta Rojas agreed, at the Immigration Judge's ("IJ") prompting, to have his case continued to allow him time to look for an attorney. Cuesta Rojas also affirmed that he understood that, without an attorney, he might be called upon to represent himself.

Cuesta Rojas was unable to find an attorney, and at the next hearing on July 5, 2019, acting pro se, he conceded removability. The IJ advised Cuesta Rojas that he might be eligible for asylum and instructed him to complete an application (Form I-589).

At a subsequent hearing on July 18, 2019, Cuesta Rojas, still pro se, filed an I-589 application, in which he claimed that he feared political persecution and torture upon a return to Cuba. The IJ accepted this filing but advised Cuesta Rojas in general language that "corroborating evidence" -- "such as identity documents," "witnesses," "affidavits, statements, or letters" -- might be needed at the subsequent merits hearing in order for Cuesta Rojas to qualify for asylum. The IJ also told Cuesta Rojas that he could "provide . . . documents or papers to show things like membership in a particular political party," as well as "police reports, medical records, and court records about what happened to you and others like you in your country." Cuesta Rojas indicated that he understood.

The removal proceedings commenced as scheduled on July 25, 2019. Cuesta Rojas was again pro se. He testified about eight incidents of interrogation, detention, and assault by Cuban officials or individuals acting in concert with them, which he claimed occurred as a result of his anti-Castro political beliefs and membership in the Cuban Independent and Democratic Party ("CID Party"). Cuesta Rojas also submitted various documents to the IJ as potential corroboration for his account. The submitted documents included a copy of Cuesta Rojas's passport, his birth certificate, a document indicating that he had no criminal record in Cuba, a receipt of items seized from him by the Cuban Ministry

- 5 -

of the Interior, a letter from a delegate of the CID Party discussing Cuesta Rojas's party membership, and the U.S. State Department's Cuba 2018 Human Rights Report.

At the end of the hearing, the IJ orally denied Cuesta Rojas's application for relief. The IJ explained in its oral ruling that, "as an initial matter," it was "called on to assess this respondent's credibility." The IJ then noted that it "must keep in mind that there must be specific and cogent reasons to question the respondent's credibility" but that "having witnessed the respondent's testimony and reviewed the evidence of record," it found that "respondent is not a credible witness."

In support of that conclusion, the IJ focused on the fact that Cuesta Rojas had been under oath during the initial credible fear interview and also at the asylum hearing but that in the IJ's view there were "several significant discrepancies" between his interview account of what he had endured in Cuba and his hearing account. In consequence, the IJ explained that "based on these significant discrepancies," it doubted "whether [Cuesta Rojas] was ever detained . . . [or] arrested in Cuba."

In addition, the IJ also found that Cuesta Rojas's application had "very significant shortcomings as to corroborating evidence," by pointing in particular to "missing" documents -- such as medical records and letters from family members. The IJ

further found that Cuesta Rojas's explanations for not submitting such documents were "hard to believe."

Because the IJ determined that Cuesta Rojas was "not a credible witness," it found that he had "failed to establish his burden of proof" with respect to his application for asylum and request for withholding of removal and protection under the CAT. Accordingly, it denied him relief and ordered his removal.

Cuesta Rojas, still pro se, timely appealed the IJ's ruling to the BIA. In addition to a statement of reasons for that appeal, Cuesta Rojas submitted new documents to the BIA as potential corroboration for his account. In particular, Cuesta Rojas submitted documents purporting to be hospital notes stating that he had been treated in September 2017 for a "wound about 3 cm [in the] left lateral part of the abdomen," and similar notes indicating treatment in December 2017 in the form of "minor surgery" for a "scalp wound." Cuesta Rojas also submitted to the BIA what he characterized as a "warning letter" from the Cuban Ministry of the Interior stating that Cuesta Rojas had been "interrogated on repeated occasions for behavior of disaffection against the Revolution"; a document indicating that Cuesta Rojas had been arrested for "demonstrat[ing] against the revolution"; and a document purporting to have been signed by four members of a Committee for the Defense of the Revolution stating that Cuesta Rojas had been "unsubscribe[d]" for counterrevolutionary ideas,

- 7 -

his "repeated[] state[ments] that in Cuba human rights are violated," and his failure to pay dues.

The BIA dismissed Cuesta Rojas's appeal on February 12, 2020, explaining that it "decline[d] to set . . . aside as clearly erroneous" the IJ's decision to deny "relief in this case based on an adverse credibility finding and the respondent's failure to corroborate his claim." (emphasis added).  The BIA also declined to remand the case in light of the evidence submitted by Cuesta Rojas for the first time on appeal, observing that Cuesta Rojas had "not explained how he obtained this evidence . . ., and why he was unable to present it during the proceedings before the Immigration Judge."  Further, the BIA added, "the newly submitted evidence does not address or resolve the credibility concerns raised by the Immigration Judge."

After the BIA issued its decision, Cuesta Rojas secured representation, and this counseled petition for review followed.

## II.

Cuesta Rojas's petition for review of the BIA's decision focuses on whether its affirmance of the IJ's adverse credibility determination -- which provided the sole basis for the denial of his asylum, withholding of removal, and CAT claims, see Mboowa v. Lynch, 795 F.3d 222, 226 (1st Cir. 2015); Pan v. Gonzales, 489 F.3d 80, 86 (1st Cir. 2007) (explaining that an "adverse credibility determination can prove fatal" to an I-589

application) -- is sustainable.  Moreover, in pressing that contention, Cuesta Rojas's petition argues chiefly that the BIA's decision is not supported by substantial evidence, as it must be to be sustained.  See Gitau v. Sessions, 878 F.3d 429, 432 (1st Cir. 2017).[1]

With respect to that contention, our review is deferential.  We must "uphold credibility findings if 'the IJ has given reasoned consideration to the evidence and has provided a cogent explanation for his finding.'"  Huang v. Holder, 620 F.3d 33, 37 (1st Cir. 2010) (quoting Muñoz-Monsalve v. Mukasey, 551 F.3d 1, 5 (1st Cir. 2008)).  In addition, our review in all events is of the record "as a whole," Al-Amiri v. Rosen, 985 F.3d 1, 4 (1st Cir. 2021) (quoting Sanabria Morales v. Barr, 967 F.3d 15, 19 (1st Cir. 2020)), and not merely of isolated pieces of it.

---

[1] Cuesta Rojas also argues that the agency violated his statutory right to counsel and his constitutional right to due process of law.  See Hernandez Lara v. Barr, 962 F.3d 45, 54-56 (1st Cir. 2020); 8 U.S.C. § 1362.  But, as he concedes, these arguments were not raised before the BIA.  We decline to consider them under the circumstances of this case, but express no opinion on whether or when we are without jurisdiction to do so.  See Bernal-Vallejo v. I.N.S., 195 F.3d 56, 60 (1st Cir. 1999) ("[While we might retain] jurisdiction over [the] constitutional due process argument, . . . [the petitioner] has not exhausted his administrative remedies as to that argument.  We [therefore] dismiss the petition.").

**A.**

Before we begin our review, it is important to clarify the nature of the findings that we must scrutinize. As we explained in recounting the procedural history, the IJ referred in explaining its decision to deny relief to Cuesta Rojas not only to the "discrepancies" between the accounts that he gave at, respectively, his credible fear interview and his testimony at his removal proceedings, but also to "very significant shortcomings as to corroborating evidence."

As we read the IJ's decision, there is no suggestion that the corroboration "shortcomings" alone provided the basis for the IJ's finding that Cuesta Rojas was not credible. Thus, we understand the adverse credibility finding to rest at least in substantial part on the asserted discrepancies between his interview account and his removal proceeding account, which, the IJ determined, the corroborating evidence could not overcome given the ways in which it was lacking. Compare Hoxha v. Gonzales, 446 F.3d 210, 216 (1st Cir. 2006) ("[I]f the applicant is found not to be entirely credible, corroborating evidence may be used to bolster an applicant's credibility." (quoting Dhima v. Gonzales, 416 F.3d 92, 95 (1st Cir. 2005))), with Joumaa v. Ashcroft, 111 F. App'x 15, 19 (1st Cir. 2004) ("A conspicuous lack of corroborating evidence that should be obtainable by the petitioner without great difficulty is a cogent reason for doubting the credibility of the

testimony."), and Albathani v. I.N.S., 318 F.3d 365, 373 (1st Cir. 2003) ("[T]here was reason to doubt the event occurred; only Albathani's word established it, and there was a conspicuous lack of corroborating evidence from his family members in America.").

Nor does the BIA's decision affirming the IJ's ruling suggest otherwise. As we have noted, it states only that the BIA "decline[d] to set . . . aside as clearly erroneous" the IJ's decision to deny "relief in this case based on an adverse credibility finding and the respondent's failure to corroborate his claim." (emphasis added).

Thus, given that "a reviewing court, in dealing with a determination . . . which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency," SEC v. Chenery Corp., 332 U.S. 194, 196 (1947), we must vacate and remand the BIA's decision affirming the IJ's adverse credibility finding so long as the "discrepancies" to which the IJ referred fail on their own to provide a supportable basis for sustaining the adverse credibility finding. For, if that finding is not supportable, then we have no basis for concluding that the adverse credibility finding itself is, given that the "shortcomings" as to corroboration do not supply a standalone basis for the IJ's adverse credibility finding. And, as we will explain, we conclude that the "discrepancies" finding itself does not hold up on substantial evidence review. We thus

- 11 -

begin and end our substantial evidence review with our assessment of what the record supports regarding that finding alone, as our judgment as to that finding in and of itself requires that we vacate the BIA's ruling affirming the IJ's order.

**B.**

The IJ described the "significant discrepancies" in Cuesta Rojas's accounts of his experience in Cuba as follows:

> [R]espondent told this court today that he had been detained eight times . . . [and] that he had been detained and not arrested. . . . The respondent told the asylum officer . . . that he had been detained four times . . . [and] that he had been arrested.
>
> . . . .
> [R]espondent testified to this court today that he had been stabbed in an incident on the street, on September 18th, 2017 . . . after having been attacked by four individuals who were in a car. . . . [But] in . . . the asylum officer's notes, the notes reflect that respondent testified that his last arrest was September 18th, 2017. The notes do not indicate any statement that respondent was stabbed on that date.
>
> . . . .
> [R]espondent's asylum application and his testimony lead this court to believe that he was detained on December 8th, 2017. However, the respondent's testimony before the asylum officer . . . was that his last arrest was September 18th, 2017. . . . There was no mention in those notes of any incident on December 8th, 2017.

Notably, the lion's share of these claimed discrepancies may be traced to a divergence between Cuesta Rojas's all-day testimony at his removal proceedings and the notes that the asylum

officer took during the one-hour telephonic interview that resulted in the two-paragraph summary of the credible fear interview that Cuesta Rojas was then asked to review and that he confirmed as accurate.[2] The extent to which these "discrepancies" may be traced back only to those notes -- and not to the summary itself -- is, in our view, of more significance than the IJ, or the BIA, appeared to acknowledge in finding the claimed discrepancies to be concerning.

For one thing, Cuesta Rojas was never asked to confirm the accuracy of the asylum officer's notes themselves. Indeed, the record does not even show that the notes to which the "discrepancies" may be traced were seen by or read to Cuesta Rojas. In addition, the notes are just that. They are not a verbatim

---

[2] That summary read in full:

> You were arrested, detained, beaten, and threatened to be sent to prison for being against the Cuban government. You expressed your opposition against the regime in an English class and you were arrested and taken to a police station and interrogated and beaten and threatened. One week later you were expelled from the university. After that you were arrested on a number of occasions and you were similarly mistreated and threatened [to] be imprisoned if you did not stop your opposing the Cuban government.

> You fear that you will be arrested, detained and possible [sic] killed in prison, if you return to Cuban [sic] because you are considered to be an opponent of the Cuban govt.

transcript of the credible fear interview that the asylum officer conducted, and, in accord with the limited purpose that the notes served, the official document that sets them forth expressly cautions in bolded language at the outset that:

**The following notes are not a verbatim transcript of this interview.**

**These notes are recorded to assist the individual officer in making a credible fear determination and the supervisory officer in reviewing the determination.**

**There may be areas of the individual's claim that were not explored or documented for the purposes of this threshold screening.**

In consequence, the government's contention that the record demonstrates "blaring inconsistencies" in Cuesta Rojas's account of what he had endured in Cuba is simply not plausible in this case insofar as those claimed extreme divergences are traceable only to the notes. For, as we will explain, when read in their proper context, the notes here -- save for one exception to which we will attend -- do not provide a supportable basis for finding that there were any inconsistencies at all.

Take first the IJ's emphasis on its finding that Cuesta Rojas told the asylum officer about four incidents of detention in Cuba but then testified at his removal proceedings about eight incidents of detention. This asserted discrepancy is predicated solely on what the notes record Cuesta Rojas as having said during

- 14 -

his credible fear interview and not on the summary of it that Cuesta Rojas affirmed was accurate.

In fact, there is no discrepancy at all between that summary and his testimony at the removal proceedings when it comes to the number of times he was detained. The summary does not at any point indicate that he was detained fewer than eight times.

Nor does anything in the record indicate that Cuesta Rojas affirmatively claimed at his credible fear interview that the four incidents of detention referenced in the notes were the only four incidents in which he was detained, such that his subsequent discussion of eight such detentions in his testimony conflicts with what he had said earlier in that interview. In fact, there is no dispute that the eight incidents about which Cuesta Rojas testified were inclusive of the four incidents to which the notes referred.

Thus, there would be reason to conclude that Cuesta Rojas changed his account in relation to the number of times that he was detained only if one were to treat the notes as establishing that Cuesta Rojas said in his interview something that he never confirmed that he said -- that he had been detained four and only four times -- and that the notes themselves do not purport to establish that he said -- that he was detained four and only four times. Yet, the IJ nonetheless found a discrepancy between Cuesta Rojas's interview account and his testimonial account based merely

on the fact that the notes say he was detained four times and the transcript of the testimony says he was detained eight times.

A similarly acontextual analysis -- that fails to treat the notes as the sketch that they represent themselves to be -- infects the IJ's emphasis on the supposed fact that Cuesta Rojas told the asylum officer during his credible fear interview that "a" person stabbed him during one of the incidents just referenced while he testified at the removal proceeding that "one" person stabbed him in the course of an assault carried out by "four" individuals. The notes at no point indicate that Cuesta Rojas represented that <u>only</u> one person was present during the attack.

Thus, the testimony is easily reconciled with the notes, even assuming the use of the word "a" in them should be given the significance that the IJ attributed to it. The former merely expands in a consistent manner on the limited details reflected in the asylum officer's own means of summarizing what Cuesta Rojas told him in the interview.

It is true that, as the IJ also pointed out, Cuesta Rojas testified before the IJ that the stabbing incident occurred on September 18, 2017, and that the notes themselves do not associate any specific date with the stabbing event. Yet, again, the fact that the verbatim transcript of Cuesta Rojas's testimony includes more detail than the notes in terms of the timing of the attack hardly supplies a reason in this case to conclude that Cuesta

Rojas's testimony about the attack at his removal proceedings is inconsistent with what he said during the interview. Given the bolded caveat that accompanied the notes, it is pure conjecture to conclude that, because the notes do not refer to a specific date, Cuesta Rojas himself must not at that time have supplied one. Nor does anything in the record provide support for a finding that Cuesta Rojas had been asked to supply the date but could not, let alone that he had represented at the interview that the attack did not occur on the date on which he ultimately testified that it did.

In these three respects, then, the record regarding the claimed discrepancies, far from supplying a basis for finding that Cuesta Rojas gave one account at his credible fear interview and an inconsistent one in his testimony at the removal proceedings, at most supplies a basis for finding that he did just what one would expect an asylum applicant to do: "add[] detail" when testifying at his removal proceedings about the events underlying his asylum application in a manner that is entirely consistent with his prior, less formal account of those same events at his credible fear interview. Kartasheva v. Holder, 582 F.3d 96, 106 (1st Cir. 2009); see also, e.g., Zhu v. Mukasey, 537 F.3d 1034, 1041 (9th Cir. 2008) ("[P]etitioner's statements [during an interview] . . . are not inconsistent with her subsequent testimony; rather, they constitute a vague outline of her more

detailed testimony at the hearing."). Thus, these three claimed discrepancies do not support characterizing this case as one in which the asylum applicant either offered contradictory accounts or so significantly augmented his account after the credible fear interview that there is a substantial reason to question the veracity of the more detailed account that he ultimately gave in his testimony. Compare Kartasheva, 582 F.3d at 106 ("While Kartasheva added a detail about this event during her testimony, it was not implausible given her previous descriptions of the incident."), with Ye v. Lynch, 845 F.3d 38, 44 (1st Cir. 2017) (petitioner "omitted any mention whatsoever of past persecution, a fear of future persecution, or events that might imply such a fear" in interview, and this was substantial evidence supporting later adverse credibility finding), and Muñoz-Monsalve, 551 F.3d at 8 (petitioner "fail[ed] to mention any of his supposedly 'extensive' political activities in either of his original immigration interviews"; "when an alien's earlier statements omit any mention of a particularly significant event or datum, an IJ is justified . . . in doubting the petitioner's veracity" (emphasis added)).

The IJ did identify one respect in which there is arguably an actual inconsistency -- at least in a technical, syntactical sense -- between the notes and the account that Cuesta Rojas supplied at the removal proceedings. The IJ pointed out

- 18 -

that the asylum officer's notes indicated that Cuesta Rojas's "last arrest" was on September 18, 2017, while Cuesta Rojas had testified before the IJ that this was not actually his last arrest but instead just "one of the last."

But, this inconsistency -- owing its origin in this case, as it does, to the notes -- cannot suffice to render the credibility finding supportable any more than the three supposed discrepancies that we have just considered. The inconsistency here is between a detail that Cuesta Rojas offered in his credible fear interview and an account that he later gave in testimony at the removal proceeding. The key issue, then, with respect to the adverse credibility finding, is whether the seeming divergence is adequately explained. See Ly v. Mukasey, 524 F.3d 126, 131 (1st Cir. 2008) ("The IJ's [adverse credibility] determination must . . . be 'based on omissions and discrepancies in the record that were not adequately explained by the alien'" (quoting Hem v. Mukasey, 514 F.3d 67, 69 (1st Cir. 2008))); Hoxha, 446 F.3d at 220 (determining whether "[t]he record . . . supports the IJ's determination that [the petitioner] did not convincingly explain the inconsistencies in his case").

Here, when asked to explain the apparently conflicting statement in the notes, Cuesta Rojas testified that he did, in fact, tell the asylum officer that this was "one of the last" arrests -- "I had never said that it had been 'the' last one."

- 19 -

The IJ rejected this seemingly plausible explanation. Yet, it did so without either pointing to any reason to do so or purporting to give any weight to the fact that the discrepancy was between interview notes and a verbatim transcript. See Kartasheva, 582 F.3d at 105 (holding that an "IJ's adverse credibility determination must be set aside" given its failure to "recognize[] the procedural differences between an asylum interview and the hearing before the IJ" and to weigh those differences "in the balance"); see also Ferreira v. Lynch, 831 F.3d 803, 809-11 (7th Cir. 2016) (remanding to the BIA when it failed to consider whether "the notes from the credible-fear interview are unreliable because . . . they are a summary and not a verbatim transcript"); Bassene v. Holder, 737 F.3d 530, 537 (9th Cir. 2013) (indicating that even "a contradiction between a petitioner's asylum interview, where the interview was not recorded and notes were taken by hand, and removal hearing testimony [alone may not be] substantial evidence to justify an adverse credibility finding" (citing Singh v. Gonzales, 403 F.3d 1081, 1087 (9th Cir. 2005))). That failure looms large in this case given that the summary itself is not inconsistent with the testimony, and that it was the summary and not the notes that Cuesta Rojas was asked and confirmed to be accurate.

The government relies on Jiang v. Gonzales, 474 F.3d 25 (1st Cir. 2007), to support its contention that the IJ did not err

in rejecting Cuesta Rojas's explanation of this discrepancy, as it contends that Jiang establishes that the IJ "was not required to accept [Cuesta Rojas's] self-serving explanation" for it.  But, in Jiang, the divergence was not between the notes taken by an asylum officer at a credible fear interview and the asylum applicant's subsequent testimony.  It was between the asylum applicant's asylum application, which he had filled out and signed, and his later testimony.  See id. at 27-28.  And, in any event, the divergence in Jiang concerned a far more significant point of fact (whether the applicant's parents had ever been arrested and interrogated about the applicant's whereabouts at all) than does the alleged discrepancy here.  See id.[3]  Thus, even if the IJ had some basis for concluding that the notes did not match up with the later testimony with regard to this particular detail about the "last arrest," Jiang supplies no support for the IJ's determination that this divergence on that point of detail was not adequately explained or that it, in and of itself, warrants a finding that Cuesta Rojas's account of past persecution is not to be believed.

---

[3] The government's reliance on Mazariegos-Paiz v. Holder, 734 F.3d 57 (1st Cir. 2013), fails for similar reasons.  See id. at 65 ("[Petitioner's] I-589 application . . . chronicled his membership in the [very political party that] the petitioner asserted . . . was the source of the alleged persecution," and his insistence "that [t]his statement was a mistake . . . was undercut by evidence that his application had been read to him; that he was fully aware of its contents; and that he had not sought to correct it." (first emphasis added)).

To this point, our focus has been on the "discrepancies" that the IJ identified that may be traced back only to what the notes of the credible fear interview report Cuesta Rojas said. But, there is also one respect in which the IJ found that there was a problematic inconsistency between the interview summary, which Cuesta Rojas had confirmed to be accurate, and his subsequent testimony. Specifically, the IJ noted that the summary indicated that Cuesta Rojas had been "arrested" in Cuba but that his testimony indicated that he had never been formally "arrested," only detained.

There is no indication, however, that, at the time of the credible fear interview, from which the summary referring to Cuesta Rojas having been arrested was drawn, any distinction was drawn by the interviewer between "arrest" and "detention," each of which is a species of a "seizure" even under the Fourth Amendment, see, e.g., United States v. Brignoni-Ponce, 422 U.S. 873, 878 (1975), such that Cuesta Rojas may fairly be deemed to have attributed significance to any such distinction during the interview. It is thus hard to see how his affirmance of the accuracy of the summary, which referred to both detentions and arrests, represented an effort to mislead. And, indeed, it was only later, during the removal proceedings -- after a distinction had come to be drawn between a "detention" that takes place without

- 22 -

a paper trail and an "arrest" that is documented[4] -- that Cuesta Rojas clarified, consistent with a document that he had supplied in support of his account which indicated that he had no criminal record in Cuba, that he had been detained but not formally arrested in connection with the commission of any crime.

Thus, we do not see how this aspect of the record supplies a basis for concluding that Cuesta Rojas's testimony concerning his repeated detentions was not credible. And that is especially so when the U.S. State Department's Human Rights Report

---

[4] This distinction came into being after the IJ observed that a document submitted by Cuesta Rojas indicated that he had no criminal record in Cuba and then pointedly asked, "how many times were you arrested by the police in Cuba, sir?" The following exchange then took place:

> Cuesta Rojas: I was detained several times. Exactly, being eight times.
>
> . . . .
>
> Immigration Judge: Sir, were you ever charged with a crime?
>
> Cuesta Rojas: No, your honor. The detentions . . . were unjust. And that is the reason why there is no documentation of us being detained. They would just take us to the police station and beat us. . . . But they never had any type of official registry of it because it was not convenient for them.
>
> . . . .
>
> Immigration Judge: So, sir, were you ever arrested in Cuba?
>
> Cuesta Rojas: No, your honor. Only detained by the detentions that they did, which were not official detentions.

that Cuesta Rojas submitted to the IJ -- which neither the IJ nor the BIA mentioned -- itself represents that undocumented detentions of the sort he claimed to have been subjected to are commonplace in Cuba.[5]  See Mukamusoni v. Ashcroft, 390 F.3d 110, 124 (1st Cir. 2004) (explaining that U.S. State Department reports are "extremely important for contextualizing, in the absence of direct corroboration, the events which [an applicant] claims constitute persecution" and can "bolster[ an] alien's claim" (quoting Cordero-Trejo, 40 F.3d at 491)).

**D.**

The government's reliance on our prior decisions in Weng v. Holder, 593 F.3d 66 (1st Cir. 2010); Loja-Paguay v. Barr, 939 F.3d 11 (1st Cir. 2019); and Pan, 489 F.3d 80, to argue that the BIA did not err in affirming the IJ's credibility finding based on the claimed discrepancies just reviewed is also mistaken.  In both Weng and Loja-Paguay, the petitioners admitted to having made statements about central matters during the credible fear

---

[5] This report states that "[p]olice officials routinely conducted short-term detentions, at times assaulting detainees" and "[s]uch detentions generally lasted from several hours to several days"; that "[t]he law provides that police officials furnish suspects a signed 'report of detention,' noting the basis, date, and location of any detention in a police facility . . . but the law was frequently not followed"; and that "[t]he police routinely violated procedural laws with impunity and at times failed or refused to provide citizens with legally required documentation, particularly during arbitrary detentions."

interview that were in conflict with their subsequent testimony, see Weng, 593 F.3d at 72; Loja-Paguay, 939 F.3d at 14-15, yet we have no admitted conflict over such a matter here. And while we stated in Pan that "the report of the asylum interview enjoys a presumption of regularity," 489 F.3d at 86 (emphasis added); see also Zaruma-Guaman v. Wilkinson, 988 F.3d 1, 7 (1st Cir. 2021) (similar), we did not thereby suggest that a disclaimer to the notes underlying it, such as the one that accompanied the asylum officer's notes in this case, should be disregarded.

**E.**

We emphasize that we recognize that a finding of adverse credibility may be supported by an accretion of discrepancies no one of which on its own suffices to demonstrate that there is reason to doubt the account offered by the one requesting relief. See Jianli Chen v. Holder, 703 F.3d 17, 26 (1st Cir. 2012). But, in considering each claimed discrepancy in its own right here, we are not pursuing a divide and conquer strategy, such that individual inconsistencies are being precluded from being considered as a whole. See Al-Amiri, 985 F.3d at 4 ("[W]e look not to isolated pieces of evidence but to the 'record considered as a whole.'" (quoting Sanabria Morales, 967 F.3d at 19)); cf. United States v. Guzman-Ortiz, 975 F.3d 43, 55 (1st Cir. 2020) ("[A] judge may not pursue a 'divide and conquer' strategy in considering whether the . . . evidence . . . adds up[.]"). We

further "recognize that aggregation may support an adverse credibility finding even if the underlying discrepancies are immaterial and 'do not go to the heart of the applicant's claim.'" Jabri v. Holder, 675 F.3d 20, 24 (1st Cir. 2012). Here, we are explaining why the record does not support finding any of these inconsistencies to be concerning at all, such that their amalgamation necessarily cannot be of concern. See, e.g., Ferreira, 831 F.3d at 811 (explaining that even following the REAL ID Act, "inconsistencies cited by immigration judges 'should not be trivial'" (quoting Tawuo v. Lynch, 799 F.3d 725, 727 (7th Cir. 2015)). Zero plus zero still equals zero, no matter the context in which the equation must be performed.

## III.

Our analysis to this point has focused solely on the claimed "discrepancies." Cuesta Rojas does separately contend that the BIA erred when it "decline[d] to set aside as clearly erroneous" the IJ's determination that its "adverse credibility finding . . . was not resolved by reliable corroborative evidence." In that connection, Cuesta Rojas also challenges the BIA's decision insofar as he contends that it "did not consider the substance of any of the [new] documents" that he provided to the BIA in his appeal from the IJ's ruling. That additional evidence included (as we have noted at the outset) records purporting to be from a hospital in Cuba that describe the

- 26 -

treatment Cuesta Rojas received from it for a "wound about 3 cm [in the] left lateral part of the abdomen" in September 2017 and the "minor surgery" he received for a "scalp wound" in December 2017; a warning letter from the Cuban Ministry of the Interior indicating that Cuesta Rojas was "interrogated on repeated occasions for behavior of disaffection against the Revolution"; and a document recording an arrest/detention of Cuesta Rojas in August 2016 after Cuesta Rojas "demonstrated against the revolution."

With respect to this contention, we note that although the IJ did point to "shortcomings" in the documentary evidence initially submitted by Cuesta Rojas, the IJ did not mention the U.S. State Department's Human Rights Report submitted by him, which asserted that others in Cuba have experienced political persecution similar in nature to what Cuesta Rojas claimed to have experienced.[6]  See Mukamusoni, 390 F.3d at 123 (noting similar

---

[6] The report, which we adverted to earlier, also states that in Cuba, "[h]uman rights issues included reports of . . . torture of political dissidents, detainees, and prisoners by security forces; . . . arbitrary arrest and detention; . . . [and] denial of freedom of association, including refusal to recognize independent associations." "Government officials . . . committed most human rights abuses and failed to investigate or prosecute those who committed the abuses." "[T]here were numerous reports of detained activists whose whereabouts were temporarily unknown because the government did not register these detentions." "There were reports of police assaulting detainees or being complicit in public harassment of and physical assaults on peaceful demonstrators."  "[A]rbitrary arrests and short-term detentions

- 27 -

instance in which the "BIA . . . made no mention of the background and country conditions evidence that [petitioner] submitted into the record"); see also El Moraghy v. Ashcroft, 331 F.3d 195, 203 (1st Cir. 2003) (explaining that these reports are "relevant as to credibility").  In addition, the IJ did not mention a letter from a CID Party delegate that Cuesta Rojas submitted which did state that Cuesta Rojas "is a member of the CID" and added that Cuesta Rojas "was being coerced, threatened, detained and on several occasions persecuted and beaten as a result of his ideology against the Castrista government," even though the IJ stated that there was an "absence of . . . corroborating evidence to establish that [Cuesta Rojas] was a member of the [CID] political party."

With respect to the new evidence that Cuesta Rojas presented to the BIA regarding corroboration, the BIA stated in summary fashion in its opinion that "the newly submitted evidence does not address or resolve the credibility concerns raised by the Immigration Judge," and then added that it declined to "remand [the] proceedings to the Immigration Court for further consideration" of that evidence.

At oral argument before us, the government represented that, in the event we were to vacate and remand the agency's

---

continue[] to be a common government method for controlling independent public expression and political activity."

decision even without addressing these findings regarding corroboration as such, the evidence concerning corroboration just described that the BIA appeared not to consider in depth would be treated as part of the record for the IJ to review. And we understand, in consequence, that the documents in question -- which purport to corroborate two attacks that resulted in injuries to Cuesta Rojas, his political activity in Cuba, and the concern it drew from Cuban authorities -- will be given such weight as it may warrant.

In light of that representation, and the fact that our ruling as to the discrepancies finding suffices to require us to vacate and remand, see Mukamusoni, 390 F.3d at 122 (explaining that it is error to treat an asylum applicant's testimony as if it were "weaker than it actually was" and to then "demand[] a higher level of corroboration" on that mistaken basis than otherwise would be required); see also Mboowa, 795 F.3d at 229 (explaining that "[i]n the ordinary course we do not . . . attempt to read the tea leaves" in the event that a central aspect of the agency's credibility assessment is flawed); Castañeda-Castillo v. Gonzales, 488 F.3d 17, 25-26 (1st Cir. 2007) (en banc) (similar),[7] we need

_____

[7] Cf. also 8 C.F.R. § 1208.13(a) ("The testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration."); 8 U.S.C. § 1158(b)(1)(B)(ii) (similar).

- 29 -

not resolve the aspects of Cuesta Rojas's petition for review that concern the IJ and the BIA's corroboration findings. Rather, consistent with the government's representation about what the record will consist of on remand, we remand those matters to be decided by the agency in a manner consistent with this opinion, and on the understanding that the new evidence that Cuesta Rojas supplied that the BIA appeared not to evaluate in depth will be given the weight that is warranted.

## IV.

We **grant** the petition for review, **vacate** the decisions of the IJ and BIA denying Cuesta Rojas's application for asylum, withholding of removal, and CAT protection, and **remand** for further proceedings consistent with this opinion.