# United States Court of Appeals
## For the First Circuit

No. 20-1718

MARIO RENE LOPEZ TROCHE,

Petitioner,

v.

MERRICK B. GARLAND,[*]
UNITED STATES ATTORNEY GENERAL,

Respondent.

---

PETITION FOR REVIEW OF AN ORDER OF
THE BOARD OF IMMIGRATION APPEALS

---

Before

Kayatta and Barron, Circuit Judges.
Saris,[**] District Judge.

---

Elena Noureddine, with whom Irene C. Friedel and PAIR Project were on brief, for petitioner.
Jennifer A. Bowen, Trial Attorney, Office of Immigration Litigation, Civil Division, with whom Jeffrey Bossert Clark, Acting Assistant Attorney General, Civil Division, and Anthony C. Payne, Assistant Director, Office of Immigration Litigation, were on brief, for respondent.

---

October 18, 2021

---

[*] Pursuant to Fed. R. App. P. 43(c)(2), Attorney General Merrick B. Garland has been substituted for former Attorney General William P. Barr as the respondent.

[**] Of the District of Massachusetts, sitting by designation.

**BARRON**, **Circuit Judge**.  Mario Rene Lopez Troche ("Lopez Troche"), a native and citizen of Honduras, petitions for review of an order of the Board of Immigration Appeals ("BIA") that affirms the denial of his application for withholding of removal and protection under the Convention Against Torture ("CAT").  We vacate and remand.

## I.

Lopez Troche came to the United States in 1988.  He was removed from this country in 1992.  He re-entered the United States shortly thereafter.  He has lived here since 1993 or 1994.

The U.S. Department of Homeland Security detained Lopez Troche and reinstated his removal order on February 6, 2013.  While detained at the Suffolk County House of Correction in Boston, Massachusetts, Lopez Troche asked to meet with an asylum officer.  The asylum officer then conducted what we will refer to as a "reasonable fear" interview.

Lopez Troche told the asylum officer that he was gay and living with HIV.  He further claimed that, on account of his sexual orientation and from a young age, "he was repeatedly harassed, abused and beaten by members of his community."  He said that he had been abused and faced attempted stoning and frequent beating because of his sexual orientation and that this abuse was exacerbated by his dressing as a woman for shows at clubs.

Lopez Troche also told the asylum officer about his relationship in Honduras with a man named Carlos Sota. Lopez Troche told the asylum officer that Sota's family blamed Lopez Troche for Sota's death from AIDS and that they told Lopez Troche that the family would kill him if he did not leave the country. Lopez Troche also told the asylum officer that he thought that Sota's family was responsible for the murder of Lopez Troche's younger brother in 2012, and that, should Lopez Troche return to Honduras, Sota's family would kill him as well.

According to the asylum officer's notes of the interview, when Lopez Troche was asked whether he had ever gone to the police to report any of the abuse that he had recounted, he stated: "we complained a few times but nothing happened[;] the police didn't do anything about it." The asylum officer's notes also recorded that Lopez Troche claimed that he feared harm from "the authorities" in Honduras "because they don't protect the homosexual community [and] . . . people go unpunished, they violate rights of homosexuals."

The asylum officer determined that Lopez Troche was credible and that Lopez Troche had established a reasonable fear of persecution in Honduras. Lopez Troche thereafter filed a Form I-589 application for withholding of removal and protection under the CAT. See 8 C.F.R. §§ 1208.16-18.

In support of the application for relief, Lopez Troche submitted a written declaration. In it, he repeated many of the claims that he had made during his interview with the asylum officer and stated that he was "afraid" that he would "be beaten, arrested, tortured, and killed by the national police or others because [he is] gay."

Lopez Troche restated in his declaration that, prior to coming to the United States, he had performed at clubs in women's clothing and "would constantly get assaulted and beaten," including, in one incident, by two men he knew from his hometown. He also again discussed his relationship with Sota and Sota's family's subsequent threats and possible murder of Lopez Troche's brother.

In addition, Lopez Troche added detail regarding beatings that he suffered at the hands of his father and being sexually assaulted at a young age. Lopez Troche also described an incident in which "somebody let off gunshots and shattered the windows to [a] taxi cab" in which he was riding as a passenger.

In support of his application for relief, Lopez Troche also submitted a number of documents. They included country condition reports from the U.S. Department of State, medical records, a physician's letter addressing his HIV diagnosis, a statement of support from the AIDS Action Committee of Massachusetts, and a letter from Dr. John Grimaldi, a psychiatrist

- 4 -

at Brigham and Women's Hospital. The letter stated that Dr. Grimaldi had been treating Lopez Troche for "depression, anxiety, and sequelae of past trauma," and that Lopez Troche's "psychiatric symptoms and HIV disease adversely affected his cognitive functioning, specifically his memory, attention and concentration[, leading to] . . . difficulty organizing and following through with basic tasks in daily living such as following a schedule, meeting deadlines, and fulfilling other responsibilities related to self-care." Lopez Troche then later supplemented these documents by submitting additional reports from the State Department, Human Rights Watch, Amnesty International, and media sources.

An Immigration Judge ("IJ") held a hearing on the merits of Lopez Troche's claims for relief on April 6, 2018. Lopez Troche testified at the hearing. Following the hearing, the IJ issued an oral decision denying the claims.

The IJ began by assessing Lopez Troche's argument that he had met his burden to show that he had been subject to past persecution. The IJ explained in doing so that it did "not find [Lopez Troche] to be a credible witness in terms of crucial aspects of his claim and his lack of credibility [was] ultimately fatal to his argument that he has suffered past persecution" and that it "g[ave] little or no weight" to the letter from Dr. Grimaldi. With that predicate adverse credibility finding in place, the IJ then

explained that Lopez Troche's attempt to show past persecution failed because -- even assuming that he had suffered the requisite level of harm and been subject to it based on his membership in a protected group -- "there [was] insufficient evidence in this record to establish that the respondent ever reported any incidents in the past to the police, or that the officials in Honduras would be unable or unwilling to protect him." The IJ further explained that "the respondent himself was not credible in this regard."

To support this adverse credibility finding, the IJ explained that although Lopez Troche had, during the hearing, "argued that he never reported any of these incidents in the past to the police," he had "made a different statement to the asylum officer." Specifically, the IJ noted that in Lopez Troche's reasonable fear interview he had stated in response to the question "did you ever go to the police?" that "we complained a few times, but nothing happened. The police did not do anything about it." The IJ then elaborated that "[t]he respondent's testimony on the witness stand, as compared to what he told the asylum officer, [was] different," and that he had not adequately explained the reason for the discrepancy.

As further support for finding that Lopez Troche failed to establish that he had been subject to past persecution, the IJ also identified what it deemed to be a second discrepancy between Lopez Troche's testimony and what he had told the asylum officer

during his reasonable fear interview. The IJ determined that this discrepancy was "fatal to the respondent's credibility in terms of his argument that the government were actors in any of the harm that he suffered" and that it could not "find that the government are actors in any of the harm that the respondent has suffered, even if the Court f[ound] that the rest of the respondent's testimony [was] credible."

Here, the IJ pointed to what it deemed to be a discrepancy between Lopez Troche's testimony at the hearing and his declaration concerning the incident in which Lopez Troche claimed to have been shot at while he was in a taxi. The IJ focused on the fact that Lopez Troche stated in his declaration that "somebody let off gunshots" while he testified that "there w[as] a group of people from the national police [and] . . . [o]ne of them shot . . . at the cab."

The IJ concluded its consideration of Lopez Troche's claim that he had suffered past persecution by returning to the issue of whether Lopez Troche was credible:

> As the Court found above, the Court cannot find the respondent credible in his assertions that the Government were actually actors in the harm that he suffered . . . . Therefore, the Court does not find that the respondent has established past persecution and the Court finds that the respondent does not enjoy a presumption of a well-founded fear of future persecution . . . .

- 7 -

The IJ then noted that Lopez Troche had not established "a pattern or practice of persecution of a group of persons similarly situated to the applicant," which would have allowed him to circumvent the requirement "to provide evidence that he would be singled out individually for such persecution." The IJ "incorporate[d] and adopt[ed] its findings" regarding the past persecution claim and, relying on them, found "there is no pattern or practice of persecution of gay Honduran men by the government in Honduras." The IJ noted in that connection that "[t]here is discrimination, there is harassment, but . . . d[id] not find it rises to a sufficient level for the respondent to meet his burden of proof."

The IJ at that point turned to Lopez Troche's CAT claim, which it also rejected. The IJ explained that "[w]hile the respondent argues that he is afraid of the government, the respondent has failed to meet his burden with detailed evidence that he would be tortured in the future or even that he has been tortured in the past." In so concluding, the IJ noted that the BIA "understands that the acquiescence can include willful blindness of a public official" but "that the respondent falls far short of his burden after reviewing the evidence in this record."

The IJ went on to acknowledge "the respondent's testimony that he has been attacked and raped by private individuals." However, the IJ explained, "Article 3 of the

- 8 -

Convention [A]gainst Torture does not protect the applicant against third parties that the government is unable to control." It then concluded that Lopez Troche had not met his "burden," presumably with respect to that showing.

Lopez Troche appealed the IJ's ruling to the BIA, and the BIA affirmed. The BIA explained that it understood the IJ to have "concluded, among other things, that the applicant did not credibly testify or otherwise corroborate his claim." The BIA further explained that it also understood the IJ to have concluded "that the applicant did not establish that (1) he was ever harmed by any government official or (2) the Honduran government was unable or unwilling to protect him."

The BIA then addressed Lopez Troche's challenges to those rulings by the IJ. The BIA explained up front that it "discern[ed] no clear error in the Immigration Judge's adverse credibility finding" and that it found that Lopez Troche's mental health issues were adequately considered in making that finding. The BIA elaborated that the IJ had "permissibly relied on inconsistencies between the applicant's testimony and his prior accounts of events." The BIA pointed out that the IJ noted "that although the applicant stated at the hearing that he never reported past incidents of harm to the police, in his statement to the asylum officer, he stated he complained to the police 'a few times.'" The BIA acknowledged Lopez Troche's argument on appeal

from the IJ's ruling "that his testimony was not inconsistent because his testimony before the Immigration Court only related to his decision not to go to the police on one occasion when he was raped by a stranger." But, the BIA rejected that explanation because it concluded that "the applicant did not limit his testimony when describing the fact that he never went to authorities, and, thus, the Immigration Judge concluded that the statements were inconsistent."

The BIA then also reviewed the IJ's finding with respect to the other purported discrepancy between Lopez Troche's testimony and his prior statements, which concerned the taxi incident. Here, the BIA explained that

> [t]o the extent that the applicant argues that any discrepancies between his statements are due to a harmless omission in the written statement that is rectified by his more detailed testimony during the hearing, an Immigration Judge is entitled to rely on omissions and inconsistencies between any prior accounts and the applicant's hearing testimony in reaching an adverse credibility finding.

Having found the IJ's adverse credibility finding supportable, the BIA then turned to Lopez Troche's withholding of removal claim. Here, the BIA explained that, "[b]ased on the adverse credibility finding, we affirm the conclusion that the applicant did not establish past persecution."

- 10 -

The BIA separately considered Lopez Troche's arguments with respect to his showing of past persecution that the IJ applied the wrong burden of proof to the past persecution analysis. The BIA stated it was "unpersuaded by [this] argument . . . particularly where, as here, the Immigration Judge's adverse credibility finding is dispositive regarding the applicant's inability to establish past persecution."

The BIA then "[t]urn[ed] to the issue of whether [Lopez Troche] was able to independently establish a future threat to his life or freedom." The BIA explained in addressing this issue the following: "[I]n addition to relying on the Immigration Judge's adverse credibility determination, we also affirm the Immigration Judge's determination that governmental authorities would not be unable or unwilling to protect [Lopez Troche]." The BIA explained that "[t]hese findings are supported by the fact that the applicant acknowledged at the final hearing that he never reported any act of harm he suffered to the police." It further explained that he had "also testified that he did not know if he ever suffered any harm from the police or officials from the Honduran government because he did not know who shot at the taxi cab in which he rode."

The BIA also addressed the evidence that Lopez Troche put forward concerning "violence against the lesbian, gay, bisexual, transgender, and intersex (LGBTI) community in Honduras from gangs and police." It noted that the IJ had found "that the

- 11 -

background materials in this case establish that homosexual men and those with HIV suffer discrimination in Honduras but not persecution because the government has a violent crime task force that investigates crimes against particularly vulnerable victims, including those of the LGBTI community." The BIA explained that, accordingly, it could "discern no clear error in the Immigration Judge's predictive findings regarding the actions that the Honduran government would likely take in the future," and so it affirmed the IJ's "conclusion that the Honduran government would be able and willing to protect the applicant in Honduras from private actor harm committed on account of his sexual orientation."

Finally, the BIA affirmed the IJ's conclusion that Lopez Troche was not eligible for protection under CAT. It noted that Lopez Troche "did not establish that he has ever been harmed by government officials," and "did not credibly establish that he ever reported any harm he experienced to the Honduran authorities, thus undermining any claim that a government official or other person acting in an official capacity would acquiesce in any torture that might be committed by a private individual."

Lopez Troche timely filed this petition for review.

## II.

We start with Lopez Troche's challenge to the BIA's affirmance of the IJ's denial of his application for withholding of removal. To be entitled to withholding of removal, Lopez Troche

must show that his life or freedom would be threatened in Honduras on account of his membership in a particular social group. 8 U.S.C. § 1231(b)(3)(A). He attempts to do so in part by demonstrating that he "suffered past persecution in [Honduras] . . . on account of . . . membership in a particular social group," as he then would be entitled to a presumption that his "life or freedom would be threatened in the future" there. 8 C.F.R. § 1208.16(b)(1)(i). He also attempts to establish that, independently of any past persecution that he suffered, he has a well-founded fear that his life or freedom would be threatened in Honduras on account of his sexual orientation and HIV status.

"[P]ersecution 'always implies some connection to government action or inaction.'" Rebenko v. Holder, 693 F.3d 87, 92 (1st Cir. 2012) (quoting Harutyunyan v. Gonzales, 421 F.3d 64, 68 (1st Cir. 2005)). Thus, as to his claim of past persecution, Lopez Troche must show involvement in the abuse that he claims to have suffered by the government or by private citizens whom "the government [was] unwilling or unable to" control. Id. (quoting Butt v. Keisler, 506 F.3d 86, 92 (1st Cir. 2007)); see also Muyubisnay-Cungachi v. Holder, 734 F.3d 66, 70 (1st Cir. 2013). He similarly must show such involvement with respect to his attempt to establish -- independent of whether he can establish that he had suffered past persecution -- that he has a well-founded fear of future persecution.

In rejecting Lopez Troche's request for withholding of removal, the BIA affirmed at the outset of its analysis the IJ's adverse credibility finding on the ground that it did not constitute "clear error," because the IJ "permissibly relied on inconsistencies between the applicant's testimony and his prior account of events." In doing so, the BIA specifically cited the same two purported "inconsistencies" that the IJ had identified. The IJ's adverse credibility finding was, according to the BIA, "dispositive regarding the applicant's inability to establish past persecution," and so, "[b]ased on the adverse credibility finding," the BIA affirmed the IJ's "conclusion that [Lopez Troche] did not experience past persecution."

The government does not dispute that if the BIA's affirmance of the IJ's adverse credibility finding cannot be sustained, then we must vacate and remand the BIA's ruling affirming the IJ's denial of Lopez Troche's request for withholding of removal. Nor do we see how the government could dispute that such a result would follow, given that the BIA's affirmance of the IJ's finding of no past persecution is plainly dependent, at least in part, on that adverse credibility finding.

The government contends, however, that an adverse credibility finding either as to Lopez Troche's account that police were involved in the taxi shooting or that he had reported the harm that he claimed to have suffered in the past to the police

- 14 -

would suffice to warrant a conclusion that Lopez Troche's showing of past persecution fails. We disagree.

The BIA's decision is not fairly read to reject on credibility grounds Lopez Troche's attempt to establish past persecution only because of the purported inconsistency between his testimony at the immigration hearing and his declaration with respect to the taxi incident. Nor is it fairly read to rest on a general finding of adverse credibility based on that purported divergence alone. If anything, it is more accurate to say that the BIA rejected Lopez Troche's attempt to show past persecution based on a finding of adverse credibility solely because of the inconsistency between his testimony at the hearing and the reasonable fear interview with respect to whether he ever reported incidents of abuse that he had suffered to the police. But, at the very least, the BIA's decision must be read to have rejected Lopez Troche's attempt to make that showing of past persecution based in part on its determination that the IJ did not clearly err in finding that there was an inconsistency between what Lopez Troche said at his reasonable fear interview regarding the reporting of past instances of abuse to police and what he said about reporting such incidents in his testimony, such that his statements in that regard in the interview could not be deemed credible. Thus, so long as the BIA's affirmance of the IJ's finding of adverse credibility as to the reporting of those

incidents does not hold up, neither does the BIA's ruling affirming the IJ's rejection of Lopez Troche's effort to establish that he suffered past persecution. See Sec. & Exch. Comm'n v. Chenery Corp., 318 U.S. 80, 95 (1943) ("[A]n administrative order cannot be upheld unless the grounds upon which the agency acted in exercising its powers were those upon which its action can be sustained.").

Our review of the BIA's affirmance of the IJ's adverse credibility determination "is deferential." Cuesta-Rojas v. Garland, 991 F.3d 266, 270 (1st Cir. 2021). Nevertheless, we will uphold the adverse credibility determination only if:

> "(1) the discrepancies and omissions underlying the determination are actually present in the record; (2) those discrepancies and omissions provide specific and cogent reasons to conclude that the petitioner's testimony was incredible with regard to facts central to the merits of [his] asylum claim; and (3) the petitioner has failed to provide a convincing explanation for the discrepancies and omissions."

Mboowa v. Lynch, 795 F.3d 222, 227 (1st Cir. 2015) (alteration in original) (quoting Ying Jin Lin v. Holder, 561 F.3d 68, 72 (1st Cir. 2009)); see also Cuesta-Rojas, 991 F.3d at 271 ("[W]e must vacate and remand the BIA's decision affirming the IJ's adverse credibility finding so long as the 'discrepancies' to which the IJ referred fail on their own to provide a supportable basis for sustaining the adverse credibility finding.").

In affirming the IJ's adverse credibility finding as to Lopez Troche's statement that he did report the incidents of past abuse to police, the BIA explained that Lopez Troche "did not limit his testimony when describing the fact that he never went to the authorities" (emphasis added). It thus appeared to read his testimony to have set forth a blanket statement that he had not reported any such instances to police, notwithstanding his statements in his reasonable fear interview that he had "complained a few times" to the police about having been subject to such abuse and that the police had done nothing in response. We are convinced, however, that the record does not reveal the claimed inconsistency between the testimony and the reasonable fear interview as to Lopez Troche's reporting to police that the BIA identified.

The BIA cited to three portions of Lopez Troche's testimony in support of its determination that the IJ did not clearly err in finding an inconsistency between what Lopez Troche told the asylum officer during his reasonable fear interview and how he testified as to the reporting of past abuse. But, none of those passages supports the BIA's determination.

In the first portion, Lopez Troche described a time when he was hospitalized after a sexual assault:

**Lopez Troche:** That happened when I was raped, when I was the age of 15 years old, when that -- guy, you know, assault me sexually, I had a, a really bad anal inflammation. . . .

- 17 -

**Counsel:** Did [the hospital] know you had been raped?
**Lopez Troche:** Yes.
**Counsel:** Did they offer to call the police?
**Lopez Troche:** Yes.
**Counsel:** Did you call the police?
**Lopez Troche:** No.
**Counsel:** Why did you not call the police?
**Lopez Troche:** Because I was very afraid of the national police and I knew they were not going to give me any type of protection.

In context, Lopez Troche's response of "no" during his testimony to the question of whether he called the police refers only to the single incident of rape that caused him to be hospitalized. It thus does not contradict Lopez Troche's statement in his reasonable fear interview that he had "complained a few times" to the police. Therefore, the statements are not inconsistent, contrary to the BIA's finding otherwise.

The second portion of Lopez Troche's testimony that the BIA found to be inconsistent with his reasonable fear interview in the same regard is as follows:

**Government Counsel:** Now, sir, the two times that you were raped in your country, that was done by private individuals, correct?
**Lopez Troche:** Yes
**Government Counsel:** Okay. And did you ever report that to anyone in the government or to the police?
**Lopez Troche:** No.

Here, too, the BIA appears to have understood Lopez Troche's answer of "no" to be a representation that he never had reported incidents of past abuse to the police, notwithstanding that he said in his reasonable fear interview that he had reported

- 18 -

them "a few times." But, once again, read in its proper context, Lopez Troche's response of "no" to the question of whether he had reported something to the police refers only to two discrete incidents: the two rapes. Lopez Troche did not state in his testimony that he never called the police in response to, for example, any physical assault. His statements here, therefore, are not inconsistent with what he said in his reasonable fear interview, despite the BIA's determination to the contrary.

The final portion of Lopez Troche's testimony on which the BIA relied in ruling as it did, but which the government does not address in its brief to us, concerns the testimony that Lopez Troche gave on redirect. That portion of his testimony proceeds as follows:

> **Counsel:** When did you -- you stated earlier that you were only in Honduras for six months. Why did you leave Honduras?
> **Lopez Troche:** Because I had a relationship with Carlos, and then he ended up sick. Then he died, and quickly. He got really seriously ill and he died. Then his family accused me that I had something to do with his death. He -- they tried to harm me. They'd threaten my life.
> **Counsel:** Did anyone else threaten you?
> **Lopez Troche:** His family.
> **Counsel:** Did you go to the police for protection?
> **Lopez Troche:** No, no, I didn't do anything of that.

The BIA again appeared to understand that Lopez Troche's statement "no, I didn't do anything of that" meant that Lopez Troche had never reported any incidents of harm to the police or gone to the police for protection, despite the fact that he stated in his reasonable fear interview that he had "complained [to the

- 19 -

police] a few times." Once again, we disagree. Lopez Troche's "no" in this context was made in response to a question regarding threats from Sota's family. Like the first two "no's" that we have addressed, this one also is not inconsistent with Lopez Troche's statement in his reasonable fear interview regarding his reporting of past abuse to the police.[1]

In sum, although the BIA found that Lopez Troche "did not limit his testimony when describing the fact that he never went to the authorities," Lopez Troche did not at any point in his testimony state that he "never" went to authorities with any such complaints. He merely answered in response to specific questions about specific incidents that he had not done so.

Nor is it possible to read either the BIA or the IJ to have inferred from Lopez Troche's failure to report to the police the specific incidents that he discussed in his testimony that he was asserting in that testimony that did not report any incidents of abuse ever. Neither the IJ's opinion nor the BIA's expressly

---

[1] We note that the IJ also relied on a fourth statement that the BIA does not appear to cite in affirming the credibility finding. Nor does the government direct us to this statement in arguing that the BIA correctly affirmed the credibility determination. This statement was made by Lopez Troche's counsel during closing arguments. For that reason, it is problematic that, in further explaining its reason for finding Lopez Troche not credible, the IJ stated that Lopez Troche's "testimony on the witness stand, as compared to what he told the asylum officer, is different," because nothing Lopez Troche said on the witness stand was inconsistent with his reasonable fear interview, for the reasons we have described.

purports to premise its ruling as to adverse credibility on the basis of such inferential reasoning, see Chenery, 318 U.S. at 95, and we do not see what basis there would be for drawing that inference on this record, given that, in his reasonable fear interview, declaration, and testimony, Lopez Troche discussed a series of traumatic physical and sexual assaults that he had experienced that appears to have stretched back to a time when he was eight years old and that thus encompassed many more incidents than those addressed specifically in the portions of his testimony on which the BIA focused. As a result, we must vacate and remand the BIA's order affirming the denial of Lopez Troche's request for withholding of removal.[2]

### III.

We turn, then, to Lopez Troche's claim for protection under the CAT. The government does not dispute that insofar as

---

[2] As we have noted, the BIA separately concluded that Lopez Troche did not demonstrate that he would face "a future threat to his life or freedom," seemingly independently of its determination that he was not credible in his descriptions of whether he had reported past incidents of harm to police. It pointed to the three statements we have described above and also referenced the statement Lopez Troche's counsel made in closing that Lopez Troche "did not make any, any reports." But, because the BIA's affirmance of the adverse credibility finding supported its affirmance of the finding that Lopez Troche did not suffer past persecution, and because a finding that Lopez Troche did suffer past persecution would entitle Lopez Troche to a presumption that he would face a future threat to his life or freedom in Honduras, we need not address how this statement impacts the future threat analysis, given that the BIA did not apply that presumption.

- 21 -

the BIA's affirmance of the IJ's credibility finding regarding his past reporting of abuse to the police is not sustainable neither is the BIA's affirmance of the IJ's rejection of his CAT claim. We can see why.

In affirming the IJ's rejection of Lopez Troche's CAT claim, the BIA stated that "the applicant did not credibly establish that he ever reported any harm he experienced to the Honduran authorities, thus undermining any claim that a government official or other person acting in an official capacity would acquiesce in any torture that might be committed by a private individual."[3]  Accordingly, we must vacate and remand the BIA's ruling rejecting Lopez Troche's CAT claim as well.

## IV.

We **grant** the petition for review, **vacate** the decisions of the IJ and the BIA denying Lopez Troche's application for withholding of removal and CAT protection, and **remand** for further proceedings consistent with this opinion.

---

[3] In making this finding, the BIA cited the three portions of testimony we described above and the statement by Lopez Troche's counsel in closing.  Although we have not addressed how the last statement would impact the credibility analysis, the BIA's finding was clearly cumulative, and so we conclude that, for the same reasons that we find the BIA erred in affirming the adverse credibility finding, the BIA erred in affirming the CAT holding.